STATE OF CONNECTICUT *v.* AMIR BROOKS
(AC 24902)

Foti, DiPentima and Cretella, Js.

Argued December 7, 2004—officially released March 22, 2005

*James M. Fox*, special public defender, for the appellant (defendant).

*Elizabeth M. Moseley*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Victor Carlucci, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRETELLA, J. The defendant, Amir Brooks, appeals from the judgment of conviction, rendered following a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). He claims that there was insufficient evidence to support the conviction and, furthermore, that his conviction of both attempt to commit assault in the first degree and assault in the second degree violates the constitutional prohibition against double jeopardy. We disagree with both claims and affirm the judgment of the trial court.

The defendant's arrest and subsequent conviction arise out of a rather bizarre set of circumstances. From

the evidence, the jury reasonably could have found that while the defendant was sitting on some steps in front of a multitenant building in an incoherent state, he was robbed by two young boys who went through his pockets, stealing his money, beeper and cell phone. Jennifer Allen, a female tenant in that building who witnessed the incident, and Fletcher Moore, the ultimate victim in this criminal matter, went to the defendant's aid and attempted to help him as he was falling, stumbling and bleeding from a cut on his face.

Approximately two weeks later, the defendant was allowed into Allen's residence, where he accused Allen and Moore of previously having taken his possessions. She attempted to explain to the defendant that he had been robbed by two young boys and that she and Moore simply had tried to help him. Moore then appeared from another room and ordered the defendant to leave the premises, after which the defendant left the apartment. He returned about one hour later, again accusing Moore, who was alone in the apartment, of robbing him, at which time a fight broke out. The police were called about the incident and ultimately took the defendant into custody. While in custody, he was identified by Moore as the attacker.

I

The defendant claims that there was insufficient evidence to find him guilty beyond a reasonable doubt of the crimes of which he was convicted. In reviewing his claim, we apply a two part test. We first construe the evidence in the light most favorable to sustaining the verdict, and then determine whether the facts so construed and the inferences reasonably drawn therefrom would have allowed the jury reasonably to conclude that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Merriam*, 264 Conn. 617, 628–29, 835 A.2d 895 (2003). We do not

inquire whether a reasonable view of the evidence would support a hypothesis of innocence, but rather whether a reasonable view of the evidence supports the jury's guilty verdict. Id., 629; *State* v. *Murphy*, 254 Conn. 561, 576, 757 A.2d 1125 (2000).

## A

To justify a conviction of burglary in the first degree in violation of § 53a-101 (a) (1),[1] the state had to prove beyond a reasonable doubt that (1) the defendant entered or remained unlawfully in a building, (2) he did so with the intent to commit a crime therein and (3) he was armed with a dangerous instrument.

Viewed in the light most favorable to sustaining the verdict, the evidence reflects as follows. On July 15, 2002, at about 10 a.m., the defendant informed his girl-friend, Natalie Benjamin, with whom he shared an apartment, that he was leaving to go to a corner store. Instead, he proceeded downstairs to Allen's apartment, knocked on her door and angrily demanded to see Moore. When Moore appeared, the defendant demanded that Moore return the items stolen from the defendant two weeks earlier. Allen explained to the defendant that he had been robbed by two young boys, and that she and Moore simply had tried to help him, but the defendant was adamant that Moore return the stolen items. The defendant eventually left the apart-ment, as did Allen. Moore asked Allen to lock the apart-ment door on her way out, as he did not "want [the defendant] coming up in here." To be sure that she did so, Moore checked the door after she left. Shortly afterward, while on the telephone, Moore realized that the defendant had gained entry into the apartment and

---

[1] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with . . . a . . . dangerous instrument . . . ."

was standing a short distance away, glaring at him. Without delay, the defendant charged Moore, but was thrown into a window. Moore testified that at that moment, he thought he saw a weapon in the defendant's pocket, so he grabbed a four foot long steel pipe to use to defend himself. The defendant wrestled the pipe from Moore and started swinging it at him, eventually striking Moore's hand, causing a laceration and other injuries. Moore then obtained a second pipe, and the altercation continued. At one point, the defendant attempted to bite Moore's right hand. Allen later returned and observed the defendant chasing Moore with the pipe.

With regard to the first element of burglary in the first degree, "[a] person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so." General Statutes § 53a-100 (b). In the present case, there was no evidence presented that Allen's apartment was open to the public, nor was there evidence presented that the defendant had permission to enter Allen's apartment. Indeed, the record reveals that Moore asked Allen to lock the apartment door after their initial confrontation with the defendant and that Moore checked the apartment door to be sure that she did so. Furthermore, Officer Keith Schmeiske of the Hartford police department, who surveyed the scene of the incident, testified that the apartment door's jamb had been damaged. On the basis of that evidence, the jury reasonably could have concluded that the defendant had entered Allen's apartment unlawfully.[2]

---

[2] The defendant suggests, however, that his entry was lawful because he entered Allen's apartment earlier that same morning without objection. Even if the evidence could be construed to show an implicit consent to the defendant's entry into Allen's apartment, the vicious assault perpetrated on Moore was clearly not within the scope of that consent. See *State* v. *Gelormino*, 24 Conn. App. 563, 572, 590 A.2d 480, cert. denied, 219 Conn. 911, 593 A.2d 136 (1991); see also *State* v. *Allen*, 216 Conn. 367, 384, 579 A.2d 1066 (1990) ("seeing the victim naked, gagged, and tied up on the floor, and

As for the second element of burglary in the first degree, namely, the defendant's "intent to commit a crime therein," we are mindful that "[i]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 475, 853 A.2d 478 (2004). The evidence reveals that after an earlier heated dispute with Allen and Moore, in which the defendant angrily demanded that Moore return the stolen items, the defendant forcefully broke into Allen's apartment, immediately lunged at Moore, wrestled a four foot long steel pipe from him and repeatedly swung it at him. From that evidence, the jury reasonably could have concluded that the defendant entered Allen's apartment with the intent to commit the crime of assault therein.

The final element of burglary in the first degree requires proof that the defendant armed himself with a dangerous instrument. A dangerous instrument is "any instrument, article or substance which, under the circumstances in which it is used . . . is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7). "[I]t need only be used in a manner capable of causing serious injury under the circumstances. Hence, the analysis focuses on the actual circumstances in which the instrument is used in order to consider the instrument's potential to cause harm. . . . The statute neither restricts the inquiry to the exact manner in which the object was actually used,

seeing [his accomplice] threaten, strike and choke the victim while the victim, in terror, looked for help, all clearly indicated to the defendant that, even if there were consent for his initially entering the condominium, it had been withdrawn"). Thus, the defendant unlawfully remained, within the meaning of the statute. See *State* v. *Allen*, supra, 382.

nor requires any resulting serious physical injury. . . . The facts and circumstances need show only that the general way in which the object was used could potentially have resulted in serious physical injury." (Citations omitted.) *State* v. *Green*, 38 Conn. App. 868, 880–81, 663 A.2d 1085 (1995). Here, there is no doubt that the instrument in question—a four foot long steel pipe—under the circumstances in which it was used—to strike Moore—was capable of causing serious physical injury.[3]

The record establishes that the defendant did not enter the apartment with the steel pipe in his possession. It came into his possession only when he wrestled it away from Moore during their scuffle. He then proceeded to use it to assault Moore. To be " 'armed' . . . simply requir[es] that a weapon be in one's possession." *State* v. *Anderson*, 178 Conn. 287, 294, 422 A.2d 323 (1979) ("[d]ictionary defines the term 'armed' as 'furnished with weapons of offense or defense: fortified, equipped' "). Further, "it is immaterial whether the defendant was armed at the time of unlawful entry, as long as he armed himself *at any time while he remained unlawfully in the apartment.*" (Emphasis added.) *State* v. *Belton*, 190 Conn. 496, 505, 461 A.2d 973 (1983); see also *State* v. *Rozmyslowicz*, 52 Conn. App. 149, 153, 726 A.2d 142 (1999) ("[w]hether a person arms himself with a dangerous instrument after entering the dwelling or enters the dwelling already armed is irrelevant with respect to his culpability under the statute"). The issue is not how the defendant armed himself, but whether he did in fact arm himself *at any time* while he remained unlawfully in the apartment. That the defendant wrestled the steel pipe from Moore does not negate the

---

[3] General Statutes § 53a-3 (4) defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

fact that the defendant used it to arm himself while he remained unlawfully in Allen's apartment. The jury reasonably could have concluded that the defendant was armed with a dangerous instrument.[4]

On the basis of our review of the record, we conclude that the evidence was legally sufficient to support the defendant's conviction of burglary in the first degree.[5]

## B

A conviction of attempt to commit assault in the first degree, in violation of §§ 53a-49 (a) (2)[6] and 53a-59 (a) (1),[7] requires proof of intentional conduct constituting a substantial step toward intentionally causing the victim serious physical injury by means of a dangerous instru-

[4] The record discloses that the court instructed the jury on the lesser included offenses of burglary in the second degree and criminal trespass in the second degree, neither of which involve being armed with a dangerous instrument. The jury, therefore, was free to disregard the defendant's having armed himself with the pipe, which the jury chose not to do.

[5] In so concluding, we reject the defendant's argument that reasonable doubt existed as to whether he committed the crime of burglary in the first degree because Moore's testimony was contradicted by that of Benjamin, who testified that she witnessed Moore swinging a pipe at the defendant. We do so because that argument is concerned exclusively with witness credibility and the weight accorded by the jury to the various witnesses, and we will not "revisit the testimony presented at trial and . . . weigh it differently." *State* v. *Griffin*, 78 Conn. App. 646, 651, 828 A.2d 651 (2003); see also *State* v. *Waden*, 84 Conn. App. 147, 152, 852 A.2d 817 ("[w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record" [internal quotation marks omitted]), cert. denied, 271 Conn. 916, 859 A.2d 574 (2004).

[6] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[7] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . ."

ment. The defendant challenges the sufficiency of the evidence as regards the intent element on the grounds that Moore initially wielded the steel pipe and that the defendant's "facial expression, gait, as well as potential possession of an identified instrument hardly rise to the level of intent to injure."

"It is axiomatic that a factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." (Internal quotation marks omitted.) *State* v. *Commerford*, 30 Conn. App. 26, 34, 618 A.2d 574, cert. denied, 225 Conn. 903, 621 A.2d 285 (1993). In the present case, the evidence, viewed in the light most favorable to sustaining the verdict, reveals that after an earlier heated dispute with Allen and Moore, in which the defendant essentially accused Moore of stealing from him, the defendant forcefully broke into Allen's apartment, wrestled a four foot long steel pipe from Moore and repeatedly swung it at him. On the basis of the cumulative effect of that evidence, we conclude that there was sufficient evidence of the defendant's conduct from which the jury reasonably could have inferred that he intended to strike Moore with a four foot long steel pipe and, thus, cause him serious physical injury.[8]

---

[8] For the sake of completeness, we address the other elements of the crime of attempt to commit assault in the first degree. Because we already have determined that there was sufficient evidence for the jury to conclude that the four foot long steel pipe, under the circumstances in which it was used, was a dangerous instrument; see part I A; we need address only whether the jury reasonably could have concluded that the defendant committed an act that constituted a substantial step toward the commission of the crime of assault in the first degree. "To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. . . . The application of this standard will, of course, depend upon the nature of the intended crime and the facts of the particular case. . . . This standard properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime." (Internal quotation marks

## C

To prove the defendant guilty of assault in the second degree, the state was required to prove beyond a reasonable doubt that (1) the defendant intended to cause physical injury to another person, (2) he did in fact cause injury to such person and (3) he did so by means of a dangerous instrument. General Statutes § 53a-60 (a) (2).[9] The defendant claims that the state failed to present sufficient evidence from which the jury reasonably could infer that he intended to cause physical injury to Moore. We disagree.

Again, we note that "[b]ecause it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Downey*, 45 Conn. App. 148, 154, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997). After he broke into Allen's apartment, the defendant charged Moore, attempted to bite him, wrestled a steel pipe from him and repeatedly swung it at him. Viewing that evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have concluded that the cumulative force of the evidence established beyond a reasonable doubt that he intended to cause physical injury to Moore.[10]

omitted.) *State* v. *Turner*, 24 Conn. App. 264, 269–70, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991). Here, the act of swinging a four foot long steel pipe at Moore is strongly corroborative of the defendant's intention to cause Moore serious physical injury. Thus, the jury reasonably could have concluded that the defendant's conduct constituted a substantial step toward the commission of the crime of attempt to commit assault in the first degree.

[9] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

[10] The jury also reasonably could have concluded that the four foot long steel pipe, under the circumstances in which it was used, was a dangerous

## II

The defendant also claims that his conviction of attempt to commit assault in the first degree and assault in the second degree violates the constitutional prohibition against double jeopardy because, as charged by the state, assault in the second degree is a lesser offense included within attempt to commit assault in the first degree. Although the defendant concedes that he did not raise that claim at trial, he now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[11] We conclude that review is warranted, as "[a] defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial . . . even if the sentence for one crime was concurrent with the sentence for the second crime. . . . Because the claim presents an issue of law, our review is plenary." (Citations omitted.) *State* v. *Crudup*, 81 Conn. App. 248, 252, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004).

The fifth amendment's prohibition of double jeopardy protects persons against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction and (3) multi-

---

instrument; see part I A; and that the defendant did in fact cause physical injury to Moore. Moore testified that the defendant struck his hand with the steel pipe, and Officer Schmeiske, who questioned Moore after the altercation with the defendant, testified that he noticed a laceration on Moore's left hand, in addition to a bite mark on his right hand.

[11] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

ple punishments for the same offense in a single trial. *State* v. *Crawford*, 257 Conn. 769, 776, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002). We are concerned with the last of those protections, under which the defendant must establish both that the charges arise out of the same act or transaction and that the charged crimes are the same offense. *State* v. *Greco*, 216 Conn. 282, 290–91, 579 A.2d 84 (1990).

The state concedes that the charges arose out of the same act and, thus, our sole inquiry is whether the charged crimes are the same offense. In *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the United States Supreme Court set forth the test to determine whether two offenses are the same offense for double jeopardy purposes: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." "If the elements of one offense include the elements of a lesser offense . . . then double jeopardy attaches." *State* v. *Sharpe*, 195 Conn. 651, 655, 491 A.2d 345 (1985); see also *Aparicio* v. *Artuz*, 269 F.3d 78, 97 (2d Cir. 2001) (" 'the relationship of the two offenses [must be] like that of concentric circles rather than overlapping circles' ").

"In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 100, 675 A.2d 866 (1996). In the second and third counts of the substitute information, the state charged the defendant with attempt to commit assault in the first degree in violation §§ 53a-49 (a) (2) and 53a-59 (a) (1), and assault in the second degree in violation of § 53a-60 (a) (2), respectively. "Filtering these . . . statutes through

the *Blockburger* sieve"; *Aparicio* v. *Artuz*, supra, 269 F.3d 97; it is clear that each provision requires proof of a fact that the other does not: conviction of attempt to commit assault in the first degree requires proof of intent to cause serious physical injury—whereas conviction of assault in the second degree does not—and conviction of assault in the second degree requires proof of physical injury—whereas conviction of attempt to commit assault in the first degree does not. As such, the charged crimes are not the same offense. Cf. *State* v. *Sharpe*, supra, 195 Conn. 655–56 ("A conviction for attempted murder requires proof of intentional conduct constituting a substantial step toward intentionally causing the death of another person. . . . No showing of actual injury is required. Conversely, a conviction for assault in the first degree requires proof that the defendant actually caused serious physical injury to another person. No showing of intent to cause death is necessary. Therefore, each offense requires proof of a fact which the other does not. Consequently, the statutory violations charged . . . are not the same offense for double jeopardy purposes." [Citation omitted.]); *State* v. *Gilchrist*, 24 Conn. App. 624, 628, 591 A.2d 131 (extending *Sharpe*'s "analysis of the elements of attempted murder and assault in the first degree . . . to the defendant's other convictions for attempted murder and assault in the second degree"), cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). We presume therefore "that the legislature did not intend to prohibit multiple punishments for the conduct underlying the two charges." *State* v. *Hill*, supra, 100.

That, however, does not end our inquiry, as "the *Blockburger* test creates only a rebuttable presumption of legislative intent . . . ." Id., 101 (test not controlling when contrary intent is manifest). The defendant may rebut the presumption "by showing a clear legislative intent that the two statutes be treated as one for double

jeopardy purposes." *State* v. *Nita,* 27 Conn. App. 103, 115, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992). Here, the defendant has failed to call our attention to any history that would suggest that the legislature intended to treat the crimes charged as one.

Accordingly, we conclude that the defendant's conviction of attempt to commit assault in the first degree and assault in the second degree does not violate the constitutional prohibition against double jeopardy.

The judgment is affirmed.

In this opinion the other judges concurred.