******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* LIAM M.*
(AC 39337)

Sheldon, Keller and Bishop, Js.

*Syllabus*

Convicted, following a jury trial, of the crimes of assault in the second degree with a dangerous instrument and disorderly conduct, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which the complainant provided a written statement at the police station claiming that the defendant had struck her with a pipe seven hours earlier. After photographing her injuries, two officers went to the defendant's residence to question him. The defendant refused to speak with the officers and attempted to close the door, but one officer prevented him from doing so by stepping over the threshold and placing his foot at the base of the door. The defendant was arrested in the foyer of his residence and transported to the police station, where he made certain incriminating statements. The trial court denied the defendant's motion to suppress those statements, finding that the warrantless arrest did not violate either the federal or state constitutions because the officers had probable cause to effectuate the warrantless arrest and exigent circumstances had existed at the time of the arrest. On appeal, the defendant claimed that there was insufficient evidence for the jury to determine that the pipe used in the assault was a dangerous instrument pursuant to the statute (§ 53a-3 [7]) defining a dangerous instrument as any instrument capable of causing death or serious physical injury under the circumstances in which it was used. He also claimed that the trial court improperly denied his motion to suppress. *Held*:

1. The evidence was sufficient to support the defendant's conviction of assault in the second degree with a dangerous instrument, as the jury reasonably could have found that the pipe used in the assault was a dangerous instrument capable of causing serious physical injury under the circumstances in which it was used by the defendant; the defendant's description of the pipe as metal, together with the photograph of the bruise it inflicted on the complainant and a description of the manner in which it was used, created the reasonable inference that the pipe was capable of causing serious physical injury in the manner in which it was used by the defendant, and notwithstanding the defendant's claim that the evidence showed only that the pipe was capable of inflicting a bruise, the question of fact for the jury was whether the general manner in which the pipe was used had the potential for causing serious physical injury, and not whether a serious physical injury actually resulted.

(*One judge dissenting*)

2. The trial court erred in denying the defendant's motion to suppress his incriminating statements to the police: the record showed that the warrantless arrest occurred inside the defendant's home, which rendered it presumptively unreasonable unless one of the established exceptions to the warrant requirement was met, and because probable cause for a warrantless arrest in the home is not an exception to the exclusionary rule under the state constitution (Conn. Const., art. I, § 7), which affords greater protection than its federal counterpart, and the state did not meet its burden of proving exigent circumstances to justify the warrantless arrest, the trial court should have excluded the defendant's incriminating, custodial statements as tainted fruit of the unconstitutional warrantless arrest; moreover, the record did not support the trial court's determination that exigent circumstances existed at the time of the arrest, as there was no evidence of a risk of danger to the complainant, who had given her statement to the police at the police station seven hours after the incident occurred, or that the defendant would either destroy evidence or flee.

Argued May 15—officially released October 3, 2017

*Procedural History*

Substitute information charging the defendant with

the crimes of assault in the second degree with a dangerous instrument and disorderly conduct, brought to the Superior Court in the judicial district of New Haven, geographical area number seven, where the court, *McNamara, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the matter was tried to the jury before *McNamara, J.*; verdict and judgment of guilty, from which the defendant appealed to this court; subsequently, the court, *McNamara, J.*, issued an articulation of its decision. *Reversed; new trial.*

*John R. Williams*, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Patrick Griffin*, state's attorney, and *James Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Liam M., appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree with a dangerous instruement in violation of General Statutes § 53a-60 (a) (2)[1] and disorderly conduct in violation of General Statutes § 53a-182 (a) (1).[2] On appeal, the defendant claims that (1) his conviction for assault in the second degree should be reversed because there was insufficient evidence for the jury to determine that a polyvinyl chloride (PVC) pipe is a dangerous instrument within the meaning of General Statutes § 53a-3 (7), and (2) the trial court erred in denying his motion to suppress incriminating statements that he made to police on the ground that such statements should have been excluded as tainted fruit of an unconstitutional arrest. We agree that the trial court erred in denying the defendant's motion to suppress, and, accordingly, we reverse the judgment of conviction as to both charged offenses.

The jury reasonably could have found the following facts. At approximately 11:30 p.m. on October 4, 2014, the complainant provided a written statement to the North Haven Police Department alleging that her husband, the defendant, had assaulted her at approximately 4:30 p.m. that day. The statement reads: "[The defendant] followed me outside to my car yelling at me and he picked up a grey PVC pipe and swung it at me and hit me in the right hip on the side of my rear. Prior to swinging the pipe he threw a piece of wood at me and I had an open umbrella in my hand and used it as a shield and the umbrella broke. After he struck me with the PVC pipe he then blocked me from entering my house so I got my keys out of my car which was in the driveway and went up the stairs to enter from the deck thr[ough] my kitchen. He followed me up yelling at me but did not strike me again. I grabbed my makeup case and left the house and got in my car and headed to work. On my way to work I called the [North] Haven police main [phone] number to see if I could file a complaint over the phone just to have it on record and was told I needed to come down here and file it in person and I said [okay] I couldn't I had to go to work. I did get to work around 5 p.m. and headed to the [North] Haven Police [Department] after work [at approximately] 11:30 [p.m.]."

After the complainant provided her written statement, the officers photographed a bruise on her right hip, which she claimed resulted from the defendant striking her with the PVC pipe. The complainant also indicated to police that there was a history of domestic violence between her and the defendant, and that he became angry and violent when drinking alcohol.

Acting on the basis of the information that the complainant provided, Officers John Gaspar and Michael

DiCocco of the North Haven Police Department went to the defendant's residence to question him. The defendant answered the door to his home, but remained inside the doorway and refused to speak with the officers. The defendant then attempted to close the door to his home, but Gaspar prevented him from doing so by stepping "inside with [his] foot at the base of the door . . . ." In his testimony, Gaspar acknowledged that he needed to step over the threshold to arrest the defendant, and described the place of arrest as in "the foyer." The defendant was placed under arrest and transported to the police station by DiCocco, while Gaspar remained at the residence to wait for the complainant to arrive home.[3]

While in custody, and after having received a *Miranda*[4] warning at 1:34 a.m., the defendant made an oral statement to DiCocco. The officer testified at trial as to the contents of the statement, stating that the defendant said that during "an argument [the complainant] was very upset. And that she had taken a metal pipe and that she was hitting him with it. [The defendant] said that he then removed it from her hands, and he told me that he struck her with it once." When DiCocco tried to question him about the incident, the defendant stated that he did not strike the complainant. The defendant was released from police custody, and was charged subsequently with assault in the second degree in violation of § 53a-60 (a) (2) and disorderly conduct in violation of § 53a-182 (a) (1).[5]

Prior to trial, the defendant filed a motion to suppress the custodial statements that he made to police indicating that he had hit the complainant with a " 'metal tube,' " on the ground that the statements were the tainted fruit of an unconstitutional, warrantless arrest under the state and federal constitutions. The court heard the testimony of Gaspar and DiCocco, and Chris Zyck, a friend of the defendant who claimed to have been present during the arrest.[6] Following the presentation of testimony, the court denied the defendant's motion to suppress, finding (1) "the officers had probable cause to effectuate a warrantless arrest of the defendant" from "the information the officers had from the [complainant]," and (2) "exigent circumstances existed at the time of the arrest." Thereafter, in their respective testimonies at trial, both the complainant and the defendant denied that the incident occurred.[7] The complainant's statement to the police was admitted as a full exhibit pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). On April 7, 2016, the jury found the defendant guilty of assault in the second degree and disorderly conduct. On June 17, 2016, the court sentenced the defendant to five years incarceration, execution suspended after three years, and two years of probation on the count of assault in the second degree, and ninety days incarceration on the count of

disorderly conduct, to be served concurrently. This appeal followed.

I

We address first the defendant's claim that the evidence was insufficient to support his conviction of assault in the second degree. Specifically, he argues that there was insufficient evidence that the PVC pipe was a dangerous instrument within the meaning of § 53a-3 (7) because "the state did not prove, and did not attempt to prove, that the . . . PVC pipe . . . in this case was capable under the circumstances in which it was used of causing 'serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ.'" We are not persuaded.

We begin by setting forth our standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jones*, 289 Conn. 742, 754–55, 961 A.2d 322 (2008).

"A person is guilty of assault in the second degree when . . . with intent to cause physical injury to another person, the actor causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ." General Statutes § 53a-60 (a) (2). Thus, the state bore the burden of proving beyond a reasonable doubt that "(1) the defendant intended to cause physical injury to another person, (2) he did in fact cause injury to such person and (3) he did so by means of a dangerous instrument." (Internal quotation marks omitted.) *State* v. *Bosse*, 99 Conn. App. 675, 678, 915 A.2d 932, cert. denied, 282 Conn. 906, 920 A.2d 310 (2007). The defendant claims that the state failed to meet its burden with regard to the third element because there was insufficient evidence to prove that a PVC pipe, as used in the present case, was a dangerous instrument.

Whether an instrument is a dangerous instrument is a question of fact for the jury. *State* v. *Jones*, 173 Conn. 91, 95, 376 A.2d 1077 (1977). "[F]indings of fact are entitled to great deference [on review] and will be overturned only on a showing that they were clearly erroneous." *State* v. *Moreno-Cuevas*, 104 Conn. App. 288, 291, 934 A.2d 260 (2007), cert. denied, 287 Conn. 901, 947 A.2d 344, cert. denied, 555 U.S. 947, 129 S. Ct. 400, 172 L. Ed. 2d 293 (2008). Indeed, "[i]n reviewing factual findings, [w]e do not examine the record to determine

whether the [finder of fact] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the [finder of fact] . . . ." (Internal quotation marks omitted.) *Farren* v. *Farren*, 162 Conn. App. 51, 66, 131 A.3d 253 (2015), cert. denied, 320 Conn. 933, 134 A.3d 622, 623, cert. denied, U.S. , 137 S. Ct. 296, 196 L. Ed. 2d 215 (2016).

A " '[d]angerous instrument' " is defined as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7). " 'Serious physical injury' " is defined as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4).

In determining whether an instrument is dangerous, a jury may find that an ordinary object is a dangerous instrument; *State* v. *McColl*, 74 Conn. App. 545, 554, 813 A.2d 107, cert. denied, 262 Conn. 953, 818 A.2d 782 (2003); and our case law recognizes a variety of ordinary objects as dangerous instruments in certain circumstances. See id., 555 (" 'feet and footwear' "); see also *State* v. *Leandry*, 161 Conn. App. 379, 390, 127 A.3d 1115 (hypodermic syringe), cert. denied, 320 Conn. 912, 128 A.3d 955 (2015); *State* v. *Peay*, 96 Conn. App. 421, 441, 900 A.2d 577 (defendant did not dispute that crowbar was dangerous instrument), cert. denied, 280 Conn. 909, 908 A.2d 541 (2006); *State* v. *Brooks*, 88 Conn. App. 204, 210, 868 A.2d 778 (four foot long steel pipe), cert. denied, 273 Conn. 933, 873 A.2d 1001 (2005); *State* v. *Huff*, 10 Conn. App. 330, 332, 335, 523 A.2d 906 (in trial court, defendant did not dispute that "miniature wooden baseball bat approximately sixteen inches long and two and one-half inches in diameter" was dangerous instrument), cert. denied, 203 Conn. 809, 525 A.2d 523 (1987). Thus, "[e]ach case must be individually examined to determine whether, under the circumstances in which the object is used or threatened to be used, it has the potential for causing serious physical injury." (Internal quotation marks omitted.) *State* v. *McColl*, supra, 554.

In the present case, the state presented a photograph of the PVC pipe,[8] and a photograph of the bruise on the complainant's hip, visible seven hours after the incident, which the complainant alleged was caused by the pipe. As to the character of the instrument itself, although the jury did not have the PVC pipe in evidence,[9] it had a photograph of the PVC pipe, as well as a photograph of the bruise that it caused. Additionally, the defendant himself described the pipe as " 'metal.' "[10] Thus, even though there was no testimony as to the rigidity or weight of the pipe, the defendant's description of the

pipe, together with the bruise inflicted by it, reasonably created the inference that the pipe was capable of causing serious physical injury in the manner in which it was used by the defendant.[11]

The defendant asserts that "the evidence showed only that the [PVC] pipe was capable of inflicting a bruise." In making this claim, the defendant conflates the actual harm done with the potential harm created by his conduct. Significant to our analysis is the notion, embedded in § 53a-3 (7), that an instrument may be characterized as dangerous on the basis that it is capable of causing serious physical injury by the manner in which it is used apart from the actual injury that may have been inflicted. See *State* v. *Jones*, supra, 173 Conn. 95. Thus, the question is not whether a serious injury ensued but, rather, whether the defendant's general manner of using the instrument created the risk of such an injury. Our focus on the complainant's bruise constitutes only a part of our analysis.

Indeed, "it is not necessary . . . under the definition of a dangerous instrument, that any physical injury actually have been inflicted." *State* v. *Jones*, supra, 173 Conn. 95. Rather, as this court has previously opined, for an instrument to be found to be dangerous it "need only be used in a manner capable of causing serious injury under the circumstances. Hence, the analysis focuses on the actual circumstances in which the instrument [was] used in order to consider the instrument's potential to cause harm. . . . The statute neither restricts the inquiry to the exact manner in which the object was actually used, nor requires any resulting serious physical injury. . . . *The facts and circumstances need show only that the general way in which the object was used could potentially have resulted in serious physical injury.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Brooks*, supra, 88 Conn. App. 209–10.

Accordingly, in assessing whether the jury had sufficient evidence to conclude that the instrument used by the defendant was a dangerous instrument, we look not only to the character of the instrument itself but also to the general manner in which it was used together with the resulting injury. In addition to the photographs described previously, the state presented evidence of the complainant's statement, in which she alleged that the defendant "swung" the PVC pipe at her, and struck her on her "right hip on the side of [her] rear." The jury also heard DiCocco's testimony that the defendant said he " 'struck' " the complainant with a " 'metal tube.' " Thus, the jury was presented with evidence of the type of instrument, the manner in which the instrument was used, and the injury that resulted from the defendant's use of the instrument.

In sum, in undertaking the fact intensive question of whether the PVC pipe was a dangerous instrument, the

significant inquiry for the jury was not whether a serious physical injury actually resulted, but whether the general manner in which the PVC pipe was used—swinging the PVC pipe at the complainant and striking her—had the potential for causing serious physical injury. See *State* v. *Brooks*, supra, 88 Conn. App. 209–10; see also *State* v. *Jones*, supra, 173 Conn. 95. "[D]raw[ing] reasonable inferences from the evidence . . . [and] bring[ing] to bear its common sense and experience of the affairs of life"; (internal quotation marks omitted) *State* v. *Hurdle*, 85 Conn. App. 128, 142, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004); the jury determined that the PVC pipe was a dangerous instrument.[12]

After thoroughly reviewing the record, we cannot conclude that the jury's determination was factually unsupported. On the basis of the evidence, viewed in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the PVC pipe, under the circumstances in which it was used by the defendant, was a dangerous instrument capable of causing serious physical injury. Accordingly, the evidence was sufficient to support the defendant's assault conviction.

## II

We next address the defendant's claim that the court erred in denying his motion to suppress his incriminating statements to the police because his warrantless arrest inside his home violated his constitutional rights under the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut. Specifically, the defendant argues that no exigent circumstances existed to justify his warrantless arrest, and, thus, the court should have excluded from the evidence at trial his incriminating, custodial statements as tainted fruit of the unconstitutional arrest. We agree.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a more probing factual review when a constitutional question hangs in the balance." (Internal quotation marks omitted.) *State* v. *Owen*, 126 Conn. App. 358, 363, 10 A.3d 1100, cert. denied, 300 Conn. 921, 14 A.3d 1008 (2011).

"Well known federal and state constitutional principles govern the exclusion of evidence derived from a warrantless entry into a home. The fourth amendment to the United States constitution provides: 'The right

of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" (Footnote omitted.) *State* v. *Geisler*, 222 Conn. 672, 681, 610 A.2d 1225 (1992). Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton* v. *New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). Thus, "[i]t is axiomatic that the police may not enter the home without a warrant or consent, unless one of the established exceptions to the warrant requirement is met. Indeed, [p]hysical entry of the home is the chief evil against which the wording of the fourth amendment is directed." (Internal quotation marks omitted.) *State* v. *Kendrick*, 314 Conn. 212, 224, 100 A.3d 821 (2014).

To discourage warrantless arrests, "the exclusionary rule bars the government from introducing at trial evidence obtained in violation of the fourth amendment to the United States constitution. . . . The rule applies to evidence that is derived from unlawful government conduct, which is commonly referred to as the fruit of the poisonous tree . . . . [A]rticle first, § 7, of the Connecticut constitution similarly requires the exclusion of unlawfully seized evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Brocuglio*, 264 Conn. 778, 786–87, 826 A.2d 145 (2003).

The exclusionary rule under the state constitution affords greater protection to individuals than its federal counterpart. Under the federal standard, statements made outside of the home incident to an illegal warrantless home arrest need not be excluded when the officers had probable cause to make the warrantless arrest. See *New York* v. *Harris*, 495 U.S. 14, 20–21, 110 S. Ct. 1640, 1644, 109 L. Ed. 2d 13 (1990); see *State* v. *Geisler*, supra, 222 Conn. 682. "[A]rticle first, § 7 [of the constitution of Connecticut, however] requires that evidence derived from an unlawful warrantless entry into the home be excluded unless the taint of the illegal entry is attenuated by the passage of time or intervening circumstances." *State* v. *Geisler*, supra, 690. In sum, the exclusionary rule, in the context of Connecticut's constitutional protection against warrantless arrests in the home, does not contain a probable cause exception akin to its federal constitutional counterpart.

In the present case, the record clearly reflects that a warrantless arrest occurred inside the defendant's home. Gaspar testified that the defendant "attempted to close the door to prevent the arrest. So, [Gaspar] stepped inside with [his] foot at the base of the door to prevent [the defendant] from closing it . . . ." He further testified that the arrest took place in the foyer. Such a warrantless arrest can only be effectuated if an exception to the warrant requirement exists. In its articulation of its denial of the motion to suppress, the trial court determined that "exigent circumstances existed at the time of the arrest" to support the warrantless arrest.[13] The record does not support such a finding.

Exigent circumstances refers to "those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization." (Internal quotation marks omitted.) *State* v. *Guertin*, 190 Conn. 440, 447, 461 A.2d 963 (1983). Three categories of exigent circumstances exist: "those that present a risk of danger to human life; the destruction of evidence; or the flight of a suspect." *State* v. *Kendrick*, supra, 314 Conn. 227. The exception is further limited by the context of the situation, and "[c]ircumstances which may be regarded as sufficiently exigent for a warrantless entry into an automobile may not be sufficient for a warrantless entry into a home." *State* v. *Guertin*, supra, 447.

"[W]hen there are reasonable alternatives to a warrantless search, the state has not satisfied its burden of proving exigent circumstances." (Internal quotation marks omitted.) Id., 449. Indeed, given the strengthened protections that the constitution of Connecticut grants to its citizens under article first, § 7, and that the "exceptions [to the warrant requirement] have been jealously and carefully drawn"; (internal quotation marks omitted) *State* v. *Owen*, supra, 126 Conn. App. 364; a warrantless arrest must be limited to situations that permit it. This was not such a situation.

In the present case, the complainant gave her statement to police approximately seven hours after the incident occurred, a lapse of time which, itself, belies any claim of urgency in effectuating the defendant's arrest. Once the complainant gave her statement to the police, several hours after the incident, she did indicate that she intended on returning to the residence that evening, but she was at the police station at the time of her statement. Under that circumstance, the police readily could have instructed the complainant to remain at the station until they obtained a warrant for the defendant's arrest. Instead, the police proceeded to the residence, arrested the defendant, and waited for the complainant to return home.

In sum, the court heard no evidence of a risk of danger to human life, destruction of evidence, or flight of the suspect to justify a warrantless arrest. Accordingly, the state did not meet its burden of establishing the existence of exigent circumstances in order to justify the warrantless arrest of the defendant. See *State* v. *Guertin*, supra, 190 Conn. 447. Finally, the record does not support the finding that the officers would have been unable to arrest the defendant unless they acted swiftly and without a warrant; see id.; and, thus, the defendant's warrantless arrest violated his state constitutional rights. Because the defendant's custodial statements were borne of an illegal arrest under article first, § 7, of the constitution of Connecticut, the statements must be excluded as tainted "fruit of the poisonous tree." (Internal quotation marks omitted.) *State* v. *Brocuglio*, supra, 264 Conn. 786. Accordingly, the trial court erred in denying the defendant's motion to suppress.[14]

The judgment is reversed and the case is remanded for a new trial.

In this opinion KELLER, J., concurred.

* In accordance with our policy of protecting the privacy of the victims of family violence, we decline to identify the complainant or others through whom the complainant's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 53a-60 (a) (2) provides in relevant part: "A person is guilty of assault in the second degree when . . . with intent to cause physical injury to another person, the actor causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

[2] General Statutes § 53a-182 (a) (1) provides: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . [e]ngages in fighting or in violent, tumultuous or threatening behavior . . . ."

[3] Approximately one hour after the defendant was arrested, the complainant returned to the residence. She spoke with Gaspar, who had remained on-site, and the officer took photographs of a wooden shingle and the PVC pipe.

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] On October 5, 2014, the defendant was initially charged with assault in the third degree in violation of General Statutes § 53a-61. The charge was increased to assault in the second degree in a long form information filed March 15, 2016.

[6] The court credited the testimony of the two officers, but not that of the defendant's friend. "As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Kendrick*, 314 Conn. 212, 223, 100 A.3d 821 (2014).

[7] The complainant testified that she made a false statement because she was angry with the defendant, and filing the complaint "was just a way to get back at him." The defendant later testified that, on the morning of October 4, the complainant "had received a telephone call from one of her friends . . . and she was invited out for drinks and cocktails in the afternoon at a local establishment. And, prior to this, unfortunately, I found her in bed with another man, and I made an agreement to resolve the issue based on her not frequenting any bars or restaurants or anything like that. So . . . the agreement was I was going to leave her, divorce her if the behavior continued . . . . I told her that was it, I was going to file for divorce. I had a place to stay, my sister's residence. I was going to relocate while she did

her thing. And she got very enraged and said she was going to ruin me. She knows the best way of ruining me is calling the police, because the police and I don't have a very good rapport . . . ."

[8] The photograph depicts the PVC pipe leaning against the wall near a door and surrounded by a pile of objects. The state estimates that the pipe was five feet long and two inches wide on the basis of the photograph. Although we do not find support in the record for this precise estimate, the photograph, in the context of other objects near to the pipe, readily supports the conclusion that the pipe is in excess of four feet.

[9] There is no indication in the record as to why the PVC pipe was not taken into custody and offered as an exhibit at trial.

[10] The jury heard conflicting testimony concerning the material of the PVC pipe. The jury heard that, in his statement to police, the defendant described the pipe as " 'metal.' " Gaspar, on the other hand, described the PVC pipe as "grey plastic."

[11] Although we determine in part II of this opinion that the defendant's statement should have been excluded, in determining the sufficiency of the evidence, we look to both the properly and improperly admitted evidence at trial. *State* v. *Ricketts*, 140 Conn. App. 257, 261 n.1, 57 A.3d 893, cert. denied, 308 Conn. 909, 61 A.3d 531 (2013).

[12] Furthermore, in addition to the elements for assault in the second degree, the jury instructions also included the elements for the lesser included offense of assault in the third degree, which does not require use of a dangerous instrument. "[D]raw[ing] whatever inferences from the evidence or facts established by the evidence it deem[ed] to be reasonable and logical"; *State* v. *Jones*, supra, 289 Conn. 755; the jury found the defendant guilty of assault in the second degree, and not the lesser offense. This court will "not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record . . . ." (Internal quotation marks omitted.) *State* v. *Ovechka*, 292 Conn. 533, 547, 975 A.2d 1 (2009). Rather, we "construe the evidence in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) Id.

[13] The state asserts that the defendant's claim as to the lack of exigent circumstances is moot because he challenges only one of three bases on which the court's ruling on the motion to suppress could be affirmed. In furtherance of this argument, the state claims that, in addition to exigent circumstances, (1) "the officers had probable cause to effectuate a warrantless arrest of the defendant," and (2) "based on [an] attenuation analysis . . . the defendant's 'statements were not subject to exclusion [and] were properly entered.' " (Internal quotation marks omitted.) We are not persuaded.

As noted, under the constitution of Connecticut, the existence of probable cause alone does not allow for the admission of statements made following a warrantless arrest within a defendant's place of abode. Additionally, the record reflects that the court made no attenuation analysis in either its oral ruling or its written articulation. We also reject the state's claim that an attenuation analysis can be inferred from the court's findings. "The factors to be considered in determining whether the statement of an accused is sufficiently attenuated from the original illegality to cleanse it of its taint are (1) whether *Miranda* warnings had been issued, (2) the temporal proximity of the illegal police action and the statement, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct." *State* v. *Brunetti*, 279 Conn. 39, 73, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). Although the court did note that the defendant had received a *Miranda* warning prior to making his statement, the court did not analyze any of the other three attenuation factors. In sum, the court made no finding of attenuation— either expressly or impliedly. Indeed, the record would not support such a finding. We note that the timing between the defendant's arrest and his custodial statements is similar to the interval found in *Geisler*, where our Supreme Court, on review, found that: "the time between the defendant's arrest in the home and the defendant's station house statements . . . was minimal. . . . Furthermore, there were no intervening circumstances to break the causal connection between the warrantless entry into the home and the evidence in question." (Internal quotation marks omitted.) *State* v. *Geisler*, supra, 222 Conn. 683–84. In the present case, the defendant was arrested after midnight, the police read him his *Miranda* rights as part of the booking process at 1:34 a.m., and the defendant made incriminating, custodial statements to police sometime after he received his *Miranda* warnings. There was no evidence of intervening circumstances to break

the causal connection between the defendant's warrantless arrest and his subsequent custodial statements. Because the defendant challenged the court's ruling as to probable cause and exigent circumstances, the only two bases relied upon by the court in ruling on the motion to suppress, the defendant's argument is not moot.

[14] "[M]ost constitutional violations are subject to . . . harmless error review"; *State* v. *Artis*, 314 Conn. 131, 153, 101 A.3d 915 (2014); and "the state bears the burden of proving that the constitutional impropriety was harmless beyond a reasonable doubt." *State* v. *Brown*, 279 Conn. 493, 511, 903 A.2d 169 (2006). In the present case, the state makes no argument that the admission of the defendant's statement, if erroneous, was harmless beyond a reasonable doubt as to either or both convictions. Because the state bears the burden of demonstrating harmlessness in this circumstance, and in light of the absence of such an argument, we do not undertake an unbidden harmless error analysis on review.

_____