STATE OF CONNECTICUT *v.* MICHAEL F. CULVER
(AC 26018)

Schaller, Harper and Lavine, Js.

Argued April 27—officially released September 5, 2006

*Veronica Maria Tomasic*, special public defender, for the appellant (defendant).

*Melissa Streeto Brechlin*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Michael F. Culver, appeals from the judgment of conviction, rendered after a jury trial, of two counts of criminal violation of a restraining order in violation of General Statutes (Rev. to 2003) § 53a-223b. On appeal, the defendant claims that (1) his conviction under subdivisions (1) and (2) of subsection (a) of § 53a-223b violated the constitutional protection against double jeopardy, (2) subdivisions (1) and (2) of § 53a-223b (a) are unconstitutionally vague, and (3) the trial court improperly commented on the brevity of the trial. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have made the following findings of fact. The defendant and the victim, Dawn Castor, were involved in a dating relationship from February until July, 2002. On March 20, 2003, the victim obtained a temporary restraining order against the defendant, which subsequently was served on him. The restraining order provided in relevant part that the defendant "[r]efrain from coming within 100 yards" of the victim and "[r]efrain from having any contact in any manner" with the victim. At the victim's request, the restraining order was continued without modification for an additional six months following a hearing on April 2, 2003. At that hearing, the court specified that the restraining order prohibited contact "directly or indirectly or through others" and warned the defendant that "there are very serious consequences for violating court orders . . . including the potential for incarceration."

On the afternoon of April 11, 2003, the victim left her place of employment and drove to a nearby McDonald's restaurant. As she entered the drive-through lane, the defendant drove his vehicle alongside the passenger side of her vehicle.[1] As the victim drove forward, the defendant blocked her vehicle between the curb and his vehicle. The defendant approached the passenger side of her vehicle and attempted to open her door. He stated repeatedly, "I just want to talk to you."

While the defendant remained outside of his vehicle, the victim was able to maneuver and exit from the drive-through lane. She drove to the Waterbury police department and relayed the events that had transpired to the officer on duty, Anthony Tito. Tito verified that the victim had obtained a restraining order against the defendant. Soon thereafter, the defendant entered the

[1] At trial, the victim testified that the defendant was familiar with her vehicle, as she had been driving it over the course of the past year.

police station and admitted that he had blocked the victim's vehicle at the restaurant and that he had attempted to engage her in conversation. The defendant further acknowledged that he was aware of the restraining order issued against him and that he had violated it. As a result, Tito placed the defendant under arrest.

The defendant was charged with three counts of criminal violation of a restraining order, one count of unlawful restraint and one count of disorderly conduct. Following a jury trial, the defendant was convicted of two counts of criminal violation of a restraining order and acquitted of all other charges. The court imposed a total sentence of one year and nine months incarceration. This appeal followed.[2] Additional facts will be set forth where necessary.

I

The defendant first claims that his conviction under subdivisions (1) and (2) of subsection (a) of § 53a-223b violated the constitutional protection against double jeopardy. The defendant concedes that he did not raise his claim at trial and requests review pursuant to *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3]

_____

[2] The defendant has served his sentence. We note that the completion of the sentence does not render the defendant's appeal moot because the defendant may be subject to collateral legal consequences as a result of the conviction. See *Sibron* v. *New York*, 392 U.S. 40, 53–55, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); see also *Barlow* v. *Lopes*, 201 Conn. 103, 112, 513 A.2d 132 (1986) ("[i]t is well established that since collateral legal disabilities are imposed as a matter of law because of a criminal conviction, a case will not be declared moot even where the sentence has been fully served"); *State* v. *Scott*, 83 Conn. App. 724, 727, 851 A.2d 353 (2004) (same).

[3] Under *Golding*, "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quota-

We grant review because the record is adequate for review and the claim is of constitutional magnitude.[4] We conclude, however, that a constitutional violation does not clearly exist and that the defendant was not deprived of a fair trial.[5]

We begin by noting that "[b]ecause the claim presents an issue of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Brooks*, 88 Conn. App. 204, 214, 868 A.2d 778, cert. denied, 273 Conn. 933, 873 A.2d 1001 (2005). The double jeopardy clause of the fifth amendment to the United States constitution provides in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). "The fifth amendment's prohibition of double jeopardy protects persons against (1) a second prosecution for

tion marks omitted.) *State* v. *Vasquez*, 66 Conn. App. 118, 123, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001).

[4] We find that review is warranted because "[a] defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial . . . ." (Internal quotation marks omitted.) *State* v. *Brooks*, 88 Conn. App. 204, 214, 868 A.2d 778, cert. denied, 273 Conn. 933, 873 A.2d 1001 (2005).

[5] In his supplemental brief, the defendant primarily bases his argument on the guarantees of the fifth amendment to the United States constitution and makes only a passing reference to the Connecticut constitution. Our Supreme Court has held that "the due process guarantees of [the Connecticut constitution] include protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 294, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). Nevertheless, we will confine our analysis of the defendant's claim to the federal constitution because he has not separately briefed or analyzed a double jeopardy claim under our state constitution. See *State* v. *Vega*, 259 Conn. 374, 384 n.15, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

the same offense after acquittal, (2) a second prosecution for the same offense after conviction and (3) multiple punishments for the same offense in a single trial." *State* v. *Brooks*, supra, 214–15.

The defendant's claim that he was convicted improperly of criminal violation of a restraining order under § 53a-223b (a) (1) and (2) falls within the double jeopardy protection against the imposition of multiple punishments for the same offense in a single trial. "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . [T]he issue, though essentially constitutional, becomes one of statutory construction." (Citations omitted; internal quotation marks omitted.) *State* v. *D'Antonio*, 274 Conn. 658, 715–16, 877 A.2d 696 (2005). There is no dispute in this case that the charges against the defendant were the result of the same incident. Our inquiry, therefore, is limited to whether the offenses charged are the same offense for the purposes of the double jeopardy clause.

The defendant argues that § 53a-223b prohibits a "course of action" and that, as a result, subdivisions (1) and (2) of subsection (a) delineate alternative ways of violating the statute and not separate offenses.[6] The defendant asserts that subdivisions (1) and (2) are not

---

[6] General Statutes (Rev. to 2003) § 53a-223b (a) provides in relevant part: "A person is guilty of criminal violation of a restraining order when a restraining order has been issued against such person pursuant to section 46b-15 and such person, having knowledge of the terms of the order (1) does not *stay away* from a person . . . ." (Emphasis added.)

General Statutes (Rev. to 2003) § 53a-223b (a) provides in relevant part: "A person is guilty of criminal violation of a restraining order when a restraining order has been issued against such person pursuant to section 46b-15 and such person, having knowledge of the terms of the order . . . (2) *contacts* a person . . . ." (Emphasis added.)

distinct because the terms "stay away from" and "contact," as used within the subdivisions, can be construed as "synonymous." Essentially, the defendant contends that he was subjected to multiple punishments for the same act and that the legislature specifically did not authorize separate punishments under each subdivision. The state counters that § 53a-223b (a) (1) and (2) are distinct provisions. As a result, according to the state, the defendant's conduct constituted two independent offenses, and, therefore, his conviction did not violate the prohibition against double jeopardy. We agree with the state.

"The traditional approach to analyzing whether two offenses constitute the same offense was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Greco*, 216 Conn. 282, 291, 579 A.2d 84 (1990); *State* v. *Denson*, 67 Conn. App. 803, 808–809, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002).[7]

---

[7] The defendant's claim is distinguishable from double jeopardy claims that arise when a defendant is convicted of multiple violations of one distinct statutory provision. Our Supreme Court has determined that "the proper double jeopardy inquiry when a defendant is convicted of multiple violations of the *same* statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ruscoe*, 212 Conn. 223, 257, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); see also *State* v. *Marsala*, 93 Conn. App. 582, 587–90, 889 A.2d 943 (double jeopardy claim arising from conviction of four counts of harassment in second degree in violation of General Statutes § 53a-183 [a] [3]), cert. denied, 278 Conn. 902, 896 A.2d 105 (2006); *State* v. *Nixon*, 92 Conn. App. 586, 589–97, 886 A.2d 475 (2005)

Under the *Blockburger* test, "a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other." *State* v. *Vass*, 191 Conn. 604, 615, 469 A.2d 767 (1983). "The term 'element' as used in the *Blockburger* analysis . . . means any fact that the legislature has deemed essential to the commission of the crime." *State* v. *Woodson*, 227 Conn. 1, 10, 629 A.2d 386 (1993).

In reviewing § 53a-223b and the state's long form information, we note that the crimes of criminal violation of a restraining order in violation of § 53a-223b (a) (1) and (2) each clearly require proof of an element that the other does not.[8] In order to convict the defendant under § 53a-223b (a) (1), the state had to prove, as alleged in count two of the state's long form information, that a restraining order had been issued against him pursuant to General Statutes § 46b-15,[9] that he

(double jeopardy claim arising from conviction of two counts of assault in second degree in violation of General Statutes § 53a-60 [a] [2]). In the present case, the defendant's claim arises from his conviction under two distinct statutory provisions, and, therefore, we will proceed by analyzing his claim under *Blockburger*.

[8] In count two of the state's long form information, the state charged the defendant with having violated General Statutes (Rev. to 2003) § 53a-223b (a) (1) in that "at or about 2:45 p.m. on April 11, 2003 . . . the defendant . . . when an order was issued against [him] pursuant to [General Statutes §] 46b-15 . . . and having knowledge of the terms of the order, did not stay away from [the victim] in violation of the order."

In count three of the long form information, the state charged the defendant with having violated § 53a-223b (a) (2) in that "at or about 2:45 p.m. on April 11, 2003 . . . the defendant . . . when an order was issued against [him] pursuant to [§] 46b-15 . . . and having knowledge of the terms of the order, did contact [the victim] in violation of the order."

[9] General Statutes § 46b-15 (a) provides in relevant part: "[Any] person in, or [who] has recently been in, a dating relationship who has been subjected to a continuous threat of present physical pain or physical injury by the other person in such relationship may make an application to the Superior Court for relief under this section."

General Statutes § 46b-15 (b) provides in relevant part: "The court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant . . . ."

knew of the existence of the restraining order and its terms, and that he did not *stay away from* the victim. In order to convict the defendant under § 53a-223b (a) (2), the state had to prove, as alleged in count three of the long form information, that a restraining order had been issued against him pursuant to § 46b-15, that he knew of the existence of the restraining order and its terms, and that he *contacted* the victim.

We conclude that the terms "stay away from," as used in subdivision (1), and "contact," as used in subdivision (2), denote separate and distinct conduct. "Stay away from" suggests physical proximity or spatial nearness. Indeed, the restraining order issued against the defendant is framed in spatial terms in that it ordered the defendant to "[r]efrain from coming within 100 yards" of the victim. Additionally, we note that Random House Webster's Unabridged Dictionary (2d Ed. 2001) provides "to stop or halt" as one definition of "stay" and "from this place or that place" as one definition of "away." "Contact," on the other hand, suggests more than mere physical presence; it implies the commission of an affirmative act. We note that one commonly understood meaning of "contact," found in Random House Webster's Unabridged Dictionary (2d Ed. 2001), is "to communicate with." Further, at oral argument, the defendant conceded that "contacts" requires a communicative or expressive act. As used in subdivision (2), "contacts" indicates that the defendant was prohibited from having any form of communication with the victim.

It follows from this interpretation of the statutory terms that the defendant's act of driving his car alongside the victim's car and coming within 100 yards of her constituted a violation of § 53a-223b (a) (1) in that he did not stay away from the victim. Additionally, the defendant's acts of approaching the victim's vehicle and attempting to open the door as well as speaking to the

victim constituted a violation of § 53a-223b (a) (2) in that he contacted her. Simply put, conviction under subdivision (1) of subsection (a) required proof beyond a reasonable doubt of an element not found in subdivision (2) of subsection (a).

Our interpretation of these statutory provisions is further supported by the basic tenet of statutory construction that the legislature does not intend to enact meaningless provisions. "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . [so that] no word [or phrase] in a statute is to be treated as superfluous." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 434–35, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). To determine that "stay away from" and "contacts" are synonymous, as the defendant argues, would render one subdivision of the statute superfluous.

The defendant argues that it can be inferred that the legislature did not intend to punish separate crimes under § 53a-223b because it did not specify a distinct punishment under each subdivision. We note that "[t]he *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where . . . there is a clear indication of contrary legislative intent." (Internal quotation marks omitted.) *State* v. *Servello*, 80 Conn. App. 313, 322, 835 A.2d 102 (2003), cert. denied, 267 Conn. 914, 841 A.2d 220 (2004). In the present case, the statute evinces no legislative intent to prohibit multiple convictions. Moreover, the defendant's argument is unavailing because it is well established that "[s]ince the legislature has shown that it knows how to bar multiple punishments expressly when it does not intend such punishment . . . the absence of similar language in those statutes provides evidence that the legislature

intended cumulative punishments." (Citation omitted; internal quotation marks omitted.) Id., 323; see also *State* v. *Perez*, 78 Conn. App. 610, 642, 828 A.2d 626 (2003) (noting several statutes in which legislature expressly prohibited multiple punishments for same incident), cert. denied, 271 Conn. 901, 859 A.2d 565 (2004).

The defendant's argument is also unpersuasive in light of prior case law. For example, in *State* v. *Woodson*, supra, 227 Conn. 9, our Supreme Court concluded that no double jeopardy violation resulted from the defendant's conviction of two counts of arson in the first degree in violation of General Statutes § 53a-111 (a) (3) and (4) where the statute did not set forth distinct punishments under each subsection. Similarly, in *State* v. *Tweedy*, 219 Conn. 489, 496, 594 A.2d 906 (1991), no double jeopardy violation resulted from the defendant's conviction of two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (B) where separate punishments were not articulated within each subsection. It follows that multiple punishments indeed can be imposed for violations of distinct statutory provisions without contravening the prohibition against double jeopardy despite the lack of a specific authorization by the legislature. In fact, the defendant conceded at oral argument that there is no law that separate punishments under each statutory subdivision are required in order for multiple punishments to be imposed under a particular statute.

We conclude that, applying the test articulated in *Blockburger*, the offenses of criminal violation of a restraining order in violation of § 53a-223b (a) (1) and (2) are two separate offenses for double jeopardy purposes. As a result, the defendant has failed to demonstrate that a constitutional violation clearly existed and clearly deprived him of a fair trial. Accordingly, his claim fails under *Golding*'s third prong.

## II

The defendant next claims that subdivisions (1) and (2) of § 53a-223b (a) are unconstitutionally vague as applied to the facts of this case.[10] The defendant failed to raise this claim at trial and again seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. We will review his claim under *Golding* because the record is adequate, and a claim that a statute is unconstitutionally vague implicates a defendant's fundamental due process right to fair warning. *State* v. *Coleman*, 83 Conn. App. 672, 676–77, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004), cert. denied, 544 U.S. 1050, 125 S. Ct. 2290, 161 L. Ed. 2d 1091 (2005). We conclude, however, that a constitutional violation does not clearly exist and that the defendant was not deprived of a fair trial.

We begin by setting forth the relevant legal principles. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. The Connecticut constitution also requires that statutes with penal consequences provide sufficient notice to citizens to apprise them of what conduct is prohibited. . . . The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases

---

[10] The defendant failed to identify the specific constitutional provision under which his claim is brought. Because his brief contains no independent state constitutional analysis, we limit our review to the federal constitution. See *State* v. *Merriam*, 264 Conn. 617, 631 n.17, 835 A.2d 895 (2003).

there lurk uncertainties." (Citations omitted; internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 158–59, 778 A.2d 955 (2001). "For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue." (Internal quotation marks omitted.) *State* v. *Ortiz*, 83 Conn. App. 142, 158, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004).

The defendant contends that he did not have adequate notice of the conduct prohibited under § 53a-223b because the terms "stay away from," as used in subdivision (1) of subsection (a), and "contacts," as used in subdivision (2) of subsection (a), are not precisely defined and are subject to interchangeable use. As a result, he argues, a person of ordinary intelligence would not know what conduct was proscribed by subdivisions (1) and (2).[11] The state asserts that the subdivisions are not unconstitutionally vague because a person of ordinary intelligence would have ample warning that the terms "stay away from" and "contacts," as used in the subdivisions, prohibit distinct conduct. We agree with the state.[12]

In challenging the constitutionality of a statute, the defendant bears a heavy burden. To prevail on his

---

[11] The defendant summarily argues that because of the elusive nature of the statutory terms, he was also the victim of arbitrary and discriminatory enforcement. The defendant failed, however, to brief this issue adequately. As a reviewing court, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 153 n.19, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

[12] We note at the outset that the defendant's argument that the statutory terms are interchangeable and therefore vague is unavailing. In part I, we concluded that the terms denote separate and distinct conduct in accordance with the cardinal principle of statutory construction that no statutory provision should be construed so as to render it superfluous.

vagueness claim, "[t]he defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement." (Internal quotation marks omitted.) *State* v. *Springmann*, 69 Conn. App. 400, 407, 794 A.2d 1071, cert. denied, 260 Conn. 934, 802 A.2d 89 (2002). "The proper test for determining [whether] a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute . . . . [O]ur fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Bloom*, 86 Conn. App. 463, 469, 861 A.2d 568 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1081 (2005).

With these principles in mind, we turn to the particular facts of this case. Section 53a-223b (a) provides in relevant part that "[a] person is guilty of criminal violation of a restraining order when a restraining order has been issued against such person . . . and such person, having knowledge of the terms of the order (1) does not stay away from a person . . . in violation of the order [or] (2) contacts a person in violation of the order . . . ." Although the terms "stay away from" and "contacts" are not expressly defined in the statute, "[t]he lack of an express definition, does not, in and of itself, render a statute void for vagueness. . . . If a statute . . . does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Citation omitted; internal quotation marks omitted.) *State* v. *Bloom*, supra, 86 Conn. App. 470. In part I, we relied on the common definitions of the terms "stay away from" and

"contacts" to discern their respective meanings within the context of the statute. We construed "stay away from" to mean in a physical and spatial sense and "contacts" to mean in a communicative sense. It follows from that analysis that a person of ordinary intelligence would have fair warning as to the distinct conduct proscribed by § 53a-223b (a) (1) and (2) and would anticipate that the defendant's acts of positioning his vehicle alongside the victim's vehicle, and then approaching and speaking to the victim constituted separate violations of the statute.[13]

"[W]e are mindful of the constitutional requirement that definiteness applies more strictly to those statutes with penal consequences rather than those merely with civil consequences." *Reid* v. *Commissioner of Correction*, 93 Conn. App. 95, 114, 887 A.2d 937, cert. denied, 278 Conn. 921, 902 A.2d 1221 (2006). Nevertheless, we conclude that a person of ordinary intelligence would have had adequate notice that the statute prohibited two distinct acts: (1) failing to stay away from or coming within physical proximity of the victim and (2) contacting or attempting to communicate with the victim. Accordingly, the defendant's vagueness challenge fails.

### III

The defendant's final claim is that the court improperly commented on the brevity of the trial. The defendant concedes that he did not raise his claim at trial and

---

[13] We also note that the defendant in this case was given fair warning that the statute, as implemented by the restraining order issued against him, prohibited two distinct acts. The restraining order issued against the defendant provided notice as to the meaning of "stay away from" in requiring that the defendant "[r]efrain from coming within 100 yards" of the victim. Additionally, the court elaborated on the meaning of the prohibition against "contacts" in ordering that the defendant "shall not contact the [victim] directly or indirectly through others." The record indicates that the defendant accepted and understood the terms of the restraining order and was aware that he had violated the order through his actions.

once again seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We decline to review the defendant's claim because we conclude that the defendant has failed to establish that his claim is of constitutional magnitude under *Golding*'s second prong. "The defendant . . . bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." Id., 240.

The following additional facts are relevant to our decision as to whether the defendant's claim implicates a constitutional right under *Golding*'s second prong. At the conclusion of the state's case, the court informed the jury that the trial was proceeding more quickly than had been anticipated. The court then told the jurors that they would hear any additional evidence the following morning. Before dismissing the jurors for the day, the court remarked that "[a]s criminal trials go, you'd be hard-pressed to find a shorter case."

The defendant contends that the court's comment deprived him of his due process right to a trial before an impartial judge. He claims that the comment was prejudicial in that it suggested to the jury that "for all practical purposes" the trial was complete at the conclusion of the state's case. He asserts that the court should have sua sponte disqualified itself and ordered a mistrial. We disagree.

Our review of the record reveals that the court's comment did not implicate the defendant's due process right to a fair trial. The court's statement was a neutral one concerning the progression of the trial. Realistically, this was a short trial; the state's case lasted only one day, and the court could have anticipated the length of the defendant's case from the witnesses scheduled

to be called. Furthermore, the defendant's argument that the court's comment implied that there was nothing to consider as far as the defendant's case is unpersuasive because the court also informed the jury that it would be hearing the defendant's evidence the following morning.

The defendant has not demonstrated that his claim implicates his due process right to a fair trial, and, therefore, it fails to satisfy *Golding*'s second prong. We decline to review his claim.

The judgment is affirmed.

In this opinion the other judges concurred.