******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* REGGIE BATTLE
(AC 40578)

DiPentima, C. J., and Bright and Moll, Js.

*Syllabus*

The defendant, who had been convicted of carrying a pistol without a permit, criminal trespass and violation of probation, appealed to this court from the judgment of the trial court dismissing his motion to correct an illegal sentence. In November, 2005, the defendant had been sentenced to twenty years of incarceration, execution suspended after nine years, and five years of probation, in connection with a guilty plea to conspiracy to commit assault in the first degree and his admission to violating his probation. In January, 2014, he admitted to a violation of probation and pleaded guilty to various crimes regarding the carrying and possession of a pistol. The trial court sentenced him to five years of incarceration and six years of special parole, and revoked his probation. Thereafter, the defendant filed a motion to correct an illegal sentence, which the trial court dismissed. Although the trial court concluded that the defendant's claim did not fall within the ambit of the rule of practice (§ 43-22) governing motions to correct an illegal sentence, it proceeded to consider and reject the merits of the defendant's motion, and concluded that a sentence that included a period of special parole was authorized by our statutes and case law. On appeal to this court, the defendant claimed that the trial court improperly dismissed his motion to correct an illegal sentence. *Held*:

1. The trial court improperly determined that it lacked jurisdiction to consider the defendant's motion to correct an illegal sentence and dismissed the motion, in which the defendant alleged that special parole cannot be imposed following a violation of probation; because the defendant challenged the sentence imposed, rather than the events leading to his conviction, he set forth a colorable claim regarding the legality of the sentence imposed for violation of his probation, and the trial court, therefore, had jurisdiction to consider the merits of the defendant's motion.

2. The defendant could not prevail on his claim that the imposition of special parole, following a determination that he had violated his probation, constituted an illegal sentence: the statute governing violation of probation (§ 53a-32 [d] [4]) specifically authorizes the trial court to revoke a sentence of probation and, in the event that the probation has been revoked, provides that the court shall require the defendant to serve the sentence imposed or impose any lesser sentence, and the defendant's sentence in 2014, including the use of special parole, fell within the "any lesser sentence" language of § 53a-32 (d); accordingly, the use of special parole following a finding of a violation of probation is authorized by § 53a-32, and the imposition of special parole did not result in an illegal sentence.

3. The defendant could not prevail on his unpreserved claim that he was denied due process of law when his motion to correct an illegal sentence was not acted on by the specific judge who had sentenced him; the defendant cited no appellate authority holding that a motion to correct an illegal sentence or a sentence imposed in an illegal manner must be heard and adjudicated by the particular judge who imposed the sentence, the case law cited by the defendant, at most, suggested that the sentencing judge may be the judicial authority who entertains such a motion, and because there was nothing that suggested that the defendant was deprived of a full and fair proceeding with regard to the motion to correct and the defendant did not suffer a due process violation, his unpreserved claim failed under the third prong of *State* v. *Golding* (213 Conn. 233).

Argued March 11—officially released August 27, 2019

*Procedural History*

Information charging the defendant with the crimes

of carrying a pistol without a permit and criminal possession of a pistol, and with violation of probation, brought to the Superior Court in the judicial district of Hartford, where the defendant was presented to the court, *Alexander, J.*, on a plea of guilty; judgment of guilty in accordance with plea; thereafter, the court, *Dewey, J.*, dismissed the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Improper form of judgment*; *judgment directed.*

*Temmy Ann Miller*, with whom were *Aimee Lynn Mahon* and, on the brief, *Nicholas A. Marolda*, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Elizabeth Tanaka*, former assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Reggie Battle, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence. On appeal, the defendant claims that (1) the court improperly concluded that it lacked jurisdiction to consider his motion to correct an illegal sentence, (2) the court improperly concluded that the use of special parole following the finding of a probation violation did not constitute an illegal sentence and (3) he was denied due process of law when his motion to correct an illegal sentence was not acted upon by the judge who had sentenced him. We conclude that the trial court had jurisdiction to consider the defendant's motion to correct an illegal sentence but are not persuaded by his second and third claims. Accordingly, the form of the judgment is improper, and we reverse the judgment dismissing the defendant's motion to correct an illegal sentence and remand the case with direction to render judgment denying the defendant's motion.

The following facts and procedural history are relevant to this appeal. On November 7, 2005, the defendant appeared before the court, *Miano, J.*, and pleaded guilty to conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1) and admitted a violation of probation pursuant to General Statutes § 53a-32. After hearing the prosecutor's recitation of the facts[1] and conducting a plea canvass, the court accepted the defendant's guilty plea and admission. The defendant waived a presentence investigation report, and the court sentenced him in accordance with the parties' agreement. Specifically, the court sentenced the defendant to twenty years incarceration, execution suspended after nine years, and five years of probation[2] for the conspiracy to commit assault in the first degree charge. The court also terminated the defendant's probation.[3]

On January 13, 2014, the defendant appeared before the court, *Alexander, J.*, and admitted a violation of probation, pursuant to § 53a-32, and pleaded guilty to carrying a pistol without a permit in violation of General Statutes § 29-35 (a) and criminal possession of a pistol in violation of § 53a-217c. The prosecutor set forth the underlying facts[4] and, following a canvass, the court accepted the defendant's guilty plea and admission. The court then sentenced the defendant as follows: "[The] court will impose the agreement as indicated. On the violation of probation, it is ordered revoked; five years to serve, six years of special parole. On the charge of [carrying a] pistol without [a] permit, it is the sentence of the court that you receive five years to serve, which will run concurrent with the previous sentence. On the charge of criminal possession of a firearm, five years to serve, also concurrent."

On April 7, 2016, the self-represented defendant filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22.[5] On November 1, 2016, the defendant, then represented by counsel, filed an amended motion to correct, arguing that General Statutes § 54-125e expressly limits the use of special parole to those convicted of a crime and that a violation of probation is not a crime. Accordingly, the defendant claimed that his sentence was illegal. On December 23, 2016, the state filed an objection to the defendant's amended motion to correct.

On March 16, 2017, the court, *Dewey*, *J.*, issued a memorandum of decision dismissing the defendant's motion to correct an illegal sentence. Although the court concluded that the defendant's claim did not fall within the ambit of Practice Book § 43-22, it proceeded to consider, and reject, the merits of his motion. Specifically, the court reasoned that, in connection with disposing of a charge of violation of probation, a sentence that includes a period of special parole was authorized by the General Statutes and our case law. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly concluded that it lacked jurisdiction to consider his motion to correct an illegal sentence. Specifically, he argues that his claim that a sentence of special parole on a violation of probation was not permitted under our statutes fell within the limited jurisdiction authorized for a motion to correct an illegal sentence. We agree with the defendant.

This claim presents a question of law subject to the plenary standard of review. *State* v. *Mukhtaar*, 189 Conn. App. 144, 148, 207 A.3d 29 (2019). It requires us to "consider whether the defendant has raised a colorable claim within the scope of Practice Book § 43-22 that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence. . . . In the absence of a colorable claim requiring correction, the trial court has no jurisdiction to modify the sentence. . . . A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . . For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he might prevail. . . . The jurisdictional and merits inquiries are separate; whether the defendant ultimately succeeds on the merits of his claim does not affect the trial court's jurisdiction to hear it." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Evans*, 329 Conn. 770, 783–84, 189 A.3d 1184 (2018), cert. denied,      U.S.    , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019).

"[Our Supreme Court] has held that the jurisdiction

of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . Practice Book § 43-22, which provides the trial court with such authority, provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . We previously have noted that a defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to § 43-22 with the judicial authority, namely, the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 533–34, 902 A.2d 1058 (2006); see also *State* v. *Evans*, supra, 329 Conn. 778. Simply stated, "a challenge to the legality of a sentence focuses not on what transpired during the trial or on the underlying conviction. In order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Evans*, supra, 779.

The defendant argued in his motion to correct an illegal sentence that special parole cannot be imposed following a violation of probation. Specifically, he contended that the text of § 54-125e establishes that special parole may be imposed only for the conviction of a crime and that a violation of probation hearing is not a stage of a criminal prosecution. Further, he claimed that § 53a-32 (d), which sets forth the court's options following a finding of a probation violation, does not include special parole. In other words, the defendant challenged the sentence imposed, rather than the events leading to his conviction. Because the defendant set forth a colorable claim regarding the legality of the sentence imposed for violating his probation, the trial court had jurisdiction to consider the merits of the defendant's motion. We conclude, therefore, that the court improperly dismissed the motion to correct an illegal sentence filed by the defendant.

## II

Having concluded that the court had jurisdiction to decide the defendant's claim, we turn to the defendant's contention that the imposition of special parole, following the determination that he had violated his probation, constituted an illegal sentence. Specifically, he argues that the use of special parole is not authorized by § 53a-32 (d) (4) under the facts of this case. We are not

persuaded by the defendant's restrictive interpretation of the relevant statutes and principles relating to sentencing in probation violation proceedings. Accordingly, we disagree with the defendant's claim.[6]

In the court's decision, it reviewed the relevant statutes, namely, General Statutes §§ 53a-28 and 53a-32 (d). Next, it observed that "[t]he provisions relating to alternatives to incarceration, special parole and probation, must be read in harmony." The court further stated that "[i]n *State* v. *Santos T.*, 146 Conn. App. 532, 535–36, 77 A.3d 931, [cert. denied, 310 Conn. 965, 83 A.3d 345] (2013), the Connecticut Appellate Court implicitly recognized a trial court's authority to impose a term of special parole after a parole violation hearing and sentencing."[7] Finally, it reasoned that the dispositional phase of a probation revocation proceeding, in substance, generally is indistinguishable from that following a conviction and that our law affords the same discretion to the court in both instances. Ultimately, the court rejected the defendant's argument that the imposition of special parole following a finding of a probation violation constituted an illegal sentence.

On appeal, the defendant maintains that the imposition of special parole following the determination of a probation violation is not authorized by § 53a-32 and, therefore, constitutes an illegal sentence. He argues that § 53a-32 does not include specifically special parole and that its omission cannot be rectified by judicial interpretation, but rather only by legislative action. After consideration of the relevant statutes and case law, we disagree with the defendant's view of § 53a-32.

The defendant's claim requires us to engage in statutory construction. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Issues of statutory construction raise questions of law, over which we exercise plenary review." (Citation omitted; internal quotation marks omitted.) *State* v. *Hearl*, 182 Conn. App. 237, 252, 190 A.3d 42, cert. denied, 330 Conn. 903, 192 A.3d 425 (2018). "Included in the threshold inquiry are our prior interpretations of the statutory language, which we have stated are encompassed in the term 'text' as used

in § 1-2z. See *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 497–99, 923 A.2d 657 (2007)." *State* v. *Daniel B.*, 331 Conn. 1, 13, 201 A.3d 989 (2019); see also *State* v. *Boyd*, 272 Conn. 72, 78, 861 A.2d 1155 (2004) (relevant legislation and precedent guide process of statutory interpretation).

We begin with the relevant statutory language. Section 53a-32 (d) provides: "If [a violation of probation] is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. *If such sentence is revoked,* the court shall require the defendant to serve the sentence imposed or *impose any lesser sentence.* Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence." (Emphasis added.)

Section 53a-32 is a part of a larger statutory framework applicable to sentences and sentencing procedure. Our Supreme Court has recognized "that our rather intricate sentencing scheme is not always a model of clarity and that sometimes it is difficult to ascertain the rationale underlying all of its components. Nevertheless, it is our duty to seek to reconcile that scheme into a coherent system, in a manner that effectuates, to the greatest extent possible, the legislative intent behind the scheme." *State* v. *Victor O.*, 320 Conn. 239, 259, 128 A.3d 940 (2016); see also *State* v. *Ferdinand R.*, 132 Conn. App. 594, 600, 33 A.3d 793 (2011) ("When we interpret statutory text, the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . . Thus, we are required to read statutes together when they [are] related to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction" [internal quotation marks omitted]), aff'd, 310 Conn. 686, 82 A.3d 599 (2013); see generally *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 552, 46 A.3d 112 (2012). We, therefore, also must consider § 53a-28,[8] which provides the authorized sentencing options for those convicted of an offense, which include imprisonment, probation, conditional discharge and special parole as provided under § 54-125e.[9]

A brief summary of the history of special parole is informative. "[I]n 1998, [t]he legislature created the concept of special parole as a new sentencing option . . . by enacting § 54-125e. . . . The legislative history surrounding § 54-125e indicates that it was intended to operate as a sentencing option in cases [in which] the judge wanted additional supervision of a defendant after the completion of his prison sentence. Michael Mullen, the chairman of the Connecticut [B]oard of [P]arole, testified before the [J]udiciary [C]ommittee and described special parole as a sentencing option [that] ensures intense supervision of convicted felons after they're released to the community and allows the imposition of parole stipulations on . . . released inmate[s] to ensure their successful incremental [reentry] into society or if they violate their stipulations, speedy [reincarceration] before they commit [other] crime[s]. . . .

"At the same time that it enacted § 54-125e, the legislature amended § 54-128 to provide that a sentence consisting of a term of imprisonment followed by a period of special parole shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted. . . . [T]he legislature, in enacting § 54-125e intended to permit the imposition of special parole as a sentencing option [that] ensures intense supervision of convicted felons after [they are] released to the community and allows the imposition of parole stipulations on the released inmate. At the same time, the legislature intended to prevent the trial court from sentencing a defendant to a term of imprisonment and to a period of special parole, the total combined length of which exceeds the maximum sentence of imprisonment for the offense [of] which the defendant was convicted. . . . It is clear, therefore, that the legislature intended that special parole, as a form of supervised release, should be available to trial courts, provided that its imposition, in combination with a term of incarceration, does not exceed the maximum statutory period of incarceration permitted by law." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Victor O.*, supra, 320 Conn. 252–53.

Our Supreme Court has explained the difference between probation and special parole. "Pursuant to § 54-128 (c), when a defendant violates special parole, he is subject to incarceration only for a period equal to the unexpired portion of the period of special parole. Thus, for a violation that occurs on the final day of the defendant's special parole term, the defendant would be exposed to one day of incarceration. *Special parole, therefore, exposes a defendant to a decreasing period of incarceration as the term of special parole is served.* On the other hand, when a defendant violates his probation, the court may revoke his probation, and if revoked,

the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. General Statutes (Rev. to 1999) § 53a-32 (b) (4). Accordingly, if the defendant in the present case were to violate his probation on the final day of his ten year term, he would be exposed to the full suspended sentence of ten years incarceration. Thus, in contrast to a term of special parole, the defendant is exposed to incarceration for the full length of the suspended sentence, with no decrease in exposure as the probationary period is served, for the entirety of the probationary period." (Emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Tabone*, 292 Conn. 417, 429, 973 A.2d 74 (2009).

The defendant argues that because § 53a-32 (d) does not mention special parole specifically, it therefore prohibits its imposition following the revocation of probation. We disagree with the defendant's contention.

As noted by the trial court, § 53a-28 (d) provides in relevant part that "[*a*] *sentence to a period of probation . . . shall be deemed a revocable disposition, in that such sentence shall be tentative to the extent that it may be altered or revoked in accordance with said sections* but for all other purposes it shall be deemed to be a final judgment of conviction." (Emphasis added.) Section 53a-32 (d) (4) specifically authorizes the court to revoke the sentence of probation. In the event that the probation has been revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Id.

As noted by our Supreme Court in *State* v. *Tabone*, supra, 292 Conn. 429, special parole, as distinct from probation, exposes a defendant to a decreasing period of incarceration as the term of special parole is served. In the present case, the defendant, in November, 2005, was sentenced to twenty years of incarceration, execution suspended after nine years, and five years of probation. Following his release from custody, he faced the possibility of eleven years of incarceration in the event he violated his probation. In 2014, the court concluded that he had violated his probation and had the option of imposing a sentence of up to eleven years of incarceration. Instead, the court imposed a sentence of five years of incarceration and six years of special parole. The 2014 sentence, including the use of special parole, falls within the "any lesser sentence" language of § 53a-32 (d). Accordingly, we are persuaded that the use of special parole following a finding of a violation of probation is authorized by § 53a-32. For these reasons, we conclude that, in the present case, the imposition of special parole did not result in an illegal sentence.

### III

Finally, the defendant claims that he was denied due process of law when his motion to correct an illegal

sentence was not acted upon by the specific judge who had sentenced him. Specifically, he argues that Judge Alexander, who found that the defendant had violated his probation and sentenced him to a period of special parole, should have acted upon the motion to correct instead of Judge Dewey because "the sentencing court . . . was in a better position to evaluate the merits of the defendant's claims in his motion to correct." According to the defendant, the failure to refer the motion to correct to Judge Alexander constituted a violation of his right to due process. We are not persuaded.

As previously noted, Judge Miano sentenced the defendant following his conviction in 2005. Subsequent to his release from custody, Judge Alexander found, in 2014, that the defendant had violated his probation, and sentenced him, inter alia, to a period of special parole. The defendant filed an amended motion to correct on November 1, 2016. On January 17, 2017, Judge Dewey conducted a hearing[10] on the defendant's motion to correct an illegal sentence and issued a memorandum of decision on March 16, 2017.

The defendant did not raise his due process claim[11] in his motion to correct an illegal sentence or at the January 17, 2017 hearing. Accordingly, he requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015).[12] We agree with the defendant that the record is adequate and that his claim is of constitutional magnitude, and therefore his claim is reviewable pursuant to the *Golding* doctrine. *State* v. *Jerrell R.*, 187 Conn. App. 537, 543, 202 A.3d 1044 (first two *Golding* prongs address reviewability of claim while last two pertain to merits of claim), cert. denied, 331 Conn. 918, 204 A.3d 1160 (2019); see also *State* v. *Ayala*, 183 Conn. App. 590, 594, 193 A.3d 710 (2018).[13]

"We begin by noting that [b]ecause the claim presents an issue of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Culver*, 97 Conn. App. 332, 336, 904 A.2d 283, cert. denied, 280 Conn. 935, 909 A.2d 961 (2006). "Due process requires a fair hearing before a fair tribunal . . . ." *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 235, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986). "[D]ue process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Internal quotation marks omitted.) *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 826, 733 A.2d 287 (1999).

Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed

in an illegal manner or any other disposition made in an illegal manner." We note that the predecessor to § 43-22, Practice Book (1982) § 935, provided in relevant part: "The judicial authority *who sentenced the defendant* may, within ninety days, correct an illegal sentence . . . or . . . a sentence imposed in an illegal manner . . . ." (Emphasis added.) The rule was amended in 1982 to its present form, which does not limit the "judicial authority" empowered to correct an illegal sentence or a sentence imposed in an illegal manner to the sentencing court.[14]

The defendant has cited no appellate authority, and we are aware of none, holding that a defendant's motion to correct an illegal sentence or a sentence imposed in an illegal manner *must* be heard and adjudicated by the particular judge who imposed the sentence. The defendant relies on a number of cases to support his assertion that Judge Alexander, as the sentencing judge, was the only judicial authority permitted to consider the motion to correct. See *State* v. *Francis*, 322 Conn. 247, 259–60, 140 A.3d 927 (2016) (stating that motion to correct illegal sentence "is directed to the sentencing court, which can entertain and resolve the challenge most expediently" [internal quotation marks omitted]), citing *State* v. *Casiano*, 282 Conn. 614, 624–25, 922 A.2d 1065 (2007); *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 39, 779 A.2d 80 (2001) (concluding that direct appeal or motion to correct illegal sentence is proper means to challenge illegal sentence, rather than raising challenge for first time in petition for writ of habeas corpus, and observing that "to correct an illegal sentence, only the trial court can: reconstruct the sentence to conform to *its original intent* or the plea agreement; eliminate a sentence previously imposed for a vacated conviction; or resentence a defendant if it is determined that the original sentence was illegal" [emphasis added]); *State* v. *Raucci*, 21 Conn. App. 557, 558, 565, 575 A.2d 234 (affirming judgment rendered by sentencing court reimposing sentence after granting defendant's motion to correct illegal sentence), cert. denied, 215 Conn. 817, 576 A.2d 546 (1990). None of the cases cited by the defendant establishes that the sentencing judge *must* adjudicate a motion to correct an illegal sentence or a sentence imposed in an illegal manner; at most, the cases suggest that the sentencing judge *may* be the judicial authority who entertains such a motion.[15]

Due process does not mandate that a motion to correct an illegal sentence or a sentence imposed in an illegal manner be heard by the judge whom the defendant prefers or who has the greatest familiarity with the defendant. "Due process seeks to assure a defendant a fair trial, not a perfect one." (Internal quotation marks omitted.) *State* v. *Boutilier*, 144 Conn. App. 867, 877 n.4, 73 A.3d 880, cert. denied, 310 Conn. 925, 77 A.3d 139 (2013). There is nothing before us that suggests that

the defendant was deprived of a full and fair proceeding with regard to the motion to correct as a result of Judge Dewey, rather than Judge Alexander, adjudicating the motion to correct.

In sum, we conclude that the defendant did not suffer a due process violation when Judge Dewey, rather than Judge Alexander, heard and ruled on the motion to correct. Accordingly, the defendant's claim fails under the third prong of *Golding*.

The form of the judgment is improper, the judgment dismissing the defendant's motion to correct an illegal sentence is reversed, and the case is remanded with direction to render judgment denying the defendant's motion.

In this opinion the other judges concurred.

[1] The prosecutor made the following statement at the hearing: "The factual basis for the conspiracy to commit assault in the first degree, [the defendant and Bryon Taylor] along with a Lionel Gardner on November 18, 2004, got into an altercation, a verbal altercation with a William Hardy at the Westfarms Mall. These three gentlemen then chased Mr. Hardy on the highway, Mr. Hardy got off of the highway, both [the defendant] and Mr. Taylor fired shots at Mr. Hardy's car, one of them struck the car.

"They were subsequently—this car that Mr. Gardner was driving with these two defendants in it, was subsequently stopped by the Farmington Police and these two were captured right there. A short time later Mr. Gardner was captured. They found guns in their car, the casings that were found in the area where the shots were fired were, in fact, fired from those guns that they took out of the cars. . . .

"With respect to [the defendant's] violation of probation, on March 26 of 2003 . . . Judge Ward convicted him of larceny in the fourth degree, his sentence was one year suspended, two years probation."

[2] The court ordered, as a condition of probation, that the defendant not possess any handguns, firearms or long guns.

[3] The prosecutor nolled two other charges pending against the defendant.

[4] Specifically, the prosecutor stated: "[T]he defendant was sentenced on November 7, 2005, on a conspiracy [to commit] assault in the first degree to twenty years suspended after nine years, five years of probation. He began his probation on December 26, 2012, and he was arrested for the gun case on September 1, 2013. . . . He was arrested at 2:30 in the morning. Police had received a tip from a confidential informant giving a lengthy description of an individual carrying a gun in his waistband. They went to the area where the confidential informant said he would be. They saw this defendant acting—matching the description and acting in a way that made them believe that he was carrying a weapon.

"He was near the inside of Paul's Ranch House and they had some concerns about people inside the business, and they asked him, for the safety of the others, whether or not he was in possession of a firearm without a permit— without a firearm basically, and he said he was and he explained to them, the police officers, you know it's crazy out here, which is kind of ironic since his original conviction was for shooting out of a car.

"And they patted him down and found a Smith & Wesson 9 mm with eleven live rounds in it. They did a search and found out he did not have a permit for it, and since he is a convicted felon from his prior felony he was—should not have been in possession of this weapon either . . . ."

[5] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[6] We note that "[o]nce the [trial] court found that it lacked subject matter jurisdiction, any ruling on the merits of the defendant's motion was improper." *State* v. *Abraham*, 152 Conn. App. 709, 724, 99 A.3d 1258 (2014). Nevertheless, "[i]f the record . . . was adequate for review of the court's ruling, or if our determination as to the propriety of [the trial court's] ruling was solely dependent on our resolution of an issue of law, we could, in the interest of judicial economy, consider the ruling at a party's request or sua

sponte after determining that our review would not prejudice the defendant and the appellee was entitled as a matter of law to a ruling in its favor." Id., 724–25. Here, the record is adequate for our review, the court's determination that the imposition of special parole did not constitute an illegal sentence involves a question of law, the state is entitled as a matter of law to a ruling in its favor, and the defendant will not be prejudiced by our review. We also note that both parties addressed the issues in their briefs. Accordingly, we proceed to review the court's ruling on the merits of the defendant's motion.

[7] In *State* v. *Santos T.*, supra, 146 Conn. App. 533–34, the defendant did not challenge the propriety of the imposition of special parole following a finding of a probation violation.

[8] General Statutes § 53a-28 provides in relevant part: "(a) . . . [E]very person convicted of an offense shall be sentenced in accordance with this title.

"(b) Except as provided in section 53a-46a, when a person is convicted of an offense, the court shall impose one of the following sentences: (1) A term of imprisonment; or (2) a sentence authorized by section 18-65a or 18-73; or (3) a fine; or (4) a term of imprisonment and a fine; or (5) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional discharge; or (6) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a fine and a period of probation or a period of conditional discharge; or (7) a fine and a sentence authorized by section 18-65a or 18-73; or (8) a sentence of unconditional discharge; or (9) a term of imprisonment and a period of special parole as provided in section 54-125e, except that the court may not impose a period of special parole for convictions of offenses under chapter 420b."

[9] General Statutes § 54-125e (a) provides in relevant part: "Any person convicted of a crime committed on or after October 1, 1998, who received a definite sentence of more than two years followed by a period of special parole shall, at the expiration of the maximum term or terms of imprisonment imposed by the court, be automatically transferred to the jurisdiction of the chairperson of the Board of Pardons and Paroles . . . ."

[10] At the outset of the January 17, 2017 hearing, the following colloquy occurred:

"[Defense Counsel]: Prior to the commencement of argument on this case, the state and I have had some discussions with respect to a resolution of this case, and I know we brought this to the court's attention on a prior occasion. And just for the benefit of [the defendant], Judge Alexander had indicated to me that she would be conferring with the court concerning this, I don't know if that's taken place, but, for the record, [the defendant] is—desires of taking advantage of the offer that the state has conveyed.

"The Court: The difficulty is if the position of the parties is that it's an illegal sentence I can't accept the offer that was made. I did discuss it with Judge Alexander; she's not inclined.

"[Defense Counsel]: All right. Very well."

The defendant argues that this situation could have been avoided if Judge Alexander had been assigned to hear and decided the defendant's motion to correct. Assuming, arguendo, that to be true, the defendant nevertheless failed to establish a due process violation.

[11] In his appellate brief, the defendant has not raised or briefed any claims pursuant to the state constitution. Accordingly, we treat his claim as limited to the federal constitution. See, e.g., *State* v. *Delgado*, 323 Conn. 801, 805 n.4, 151 A.3d 345 (2016).

[12] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; internal quotation marks omitted.) *State* v. *Washington*, 186 Conn. App. 176, 193, 199 A.3d 44 (2018), cert. denied, 330 Conn. 958, 198 A.3d 585 (2019).

[13] The defendant also argues that we should conclude that the fact that Judge Dewey, rather than Judge Alexander, decided the motion to correct an illegal sentence constituted plain error. Practice Book § 60-5 provides in

relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court."

We disagree with the defendant that this issue rises to the level of plain error. "[T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . [Previously], we described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017).

[14] The defendant argues that "[t]he Supreme Court, in *State* v. *Pina*, 185 Conn. 473, 481–82, [440 A.2d 962] (1981), interpreted 'the judicial authority' in the predecessor to Practice Book § 43-22, to mean 'the sentencing court.' " We emphasize that *Pina* was published prior to the passage of the 1982 amendment to the Practice Book § 43-22, and, thus, does not support the defendant's contention that a motion to correct must be decided by the particular sentencing judge.

[15] In his dissenting opinion in *State* v. *McGee*, 175 Conn. App. 566, 597 n.11, 168 A.3d 495 (*Bishop, J.*, dissenting), cert. denied, 327 Conn. 970, 173 A.3d 953 (2017), Judge Bishop observed that, in only one of fifteen cases that were selected at random for a survey, the judge who had heard and adjudicated a motion to correct an illegal sentence was the original sentencing judge.